# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **TODD E. PETTY** and **MARY PAT PETTY**, | ) ) ) | Case No. |
| Plaintiffs, | ) | |
| vs. | ) ) | |
| **NATIONSTAR MORTGAGE, LLC,** a Delaware corporation, and **HEAVNER, BEYERS & MIHLAR, LLC,** an Illinois limited liability company, | ) ) ) ) ) ) ) | Trial By Jury Demanded |
| Defendants. | ) | |

---

## COMPLAINT

---

Plaintiffs Todd E. Petty and Mary Pat Petty, by and through counsel, for their Complaint against Defendants, Nationstar Mortgage, LLC, and Heavner, Beyers & Mihlar, LLC, state as follows:

### PARTIES, JURISDICTION, AND VENUE

1.      Plaintiffs Todd E. Petty ("Mr. Petty") and Mary Pat Petty ("Mrs. Petty") (collectively "Plaintiffs" or the "Pettys") are the owners of real the property

and improvements located at and commonly known as 183 Burning Bush Trail, Crystal Lake, IL 60012 (the "Home").

2.      The Pettys, at all times relevant, have maintained the Home as their primary, principal residence along with their children.

3.      Defendant Nationstar Mortgage, LLC ("Defendant" or "Nationstar") is the current servicer of a note (the "Note") and a mortgage on the Home that allegedly secures the Note (the "Mortgage") (collectively referred to hereinafter as the "Loan").

4.      Nationstar has been the servicer of the Loan since at least November 1, 2015.  The Loan was alleged to have been in default when Nationstar began servicing the Loan.

5.      On or about May 4, 2012, foreclosure proceedings were initiated against the Pettys and the Home in a case now captioned as *Nationstar Mortgage, LLC v Todd E. Petty, et al.*,  in the Twenty-Second Judicial Circuit Court in and for McHenry County, Illinois and assigned Case Number 12 CH 1113 (the "Foreclosure").

6.      Nationstar was and is represented in the Foreclosure by defendant Heavner, Beyers & Mihlar, LLC ("Heavner"), a limited liability company whose members and employees are engaged in the practice of law in Illinois.  Heavner

2

has and does represent Nationstar since Nationstar became the servicer of the Loan.

7.     Jurisdiction of the claims against Nationstar is conferred by 28 U.S.C. §1331 as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA), the Real Estate Settlement Procedures Act, 12 U.S.C. §§2601, *et seq*. (RESPA).

8.     This action is specifically filed to enforce regulations promulgated by the Consumer Finance Protection Bureau (CFPB) that became effective on January 10, 2014, specifically, 12 C.F.R. §§ 1024.35, 1024.36, and 1024.41 of Regulation X.

9.     Jurisdiction of the claims against Heavner is conferred by 15 U.S.C. §1692k(d) as these claims arise under the Fair Debt Collection Practice Act, 15 U.S.C. §1692, *et seq.* ("FDCPA").

10.     Venue lies in this District pursuant to 28 U.S.C. §1391(b) as a substantial part of the events or omissions giving rise to the claims asserted herein occurred, or a substantial part of property that is the subject of the action is situated this District.

## SUMMARY OF CLAIMS

11.     In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

12.     Specifically, on January 17, 2013, the CFPB issued the RESPA (Regulation X) and TILA (Regulation Z) Mortgage Servicing Final Rules, 78 F.R. 10901 (February 14, 2013) and 78 F.R. 10695 (Regulation X) (February 14, 2013), which became effective on January 10, 2014.

13.     The Loan in the instant matter is a "federally related mortgage loan" as said term is defined by 12 C.F.R. §1024.2(b).

14.     Nationstar is subject to the aforesaid Regulations and does not qualify for the exception for "small servicers", as such term is defined in 12 C.F.R. §1026.41(e)(4), nor the exemption for a "qualified lender", as such term is defined in 12 C.F.R. §617.700.

15.     The Pettys are asserting a claim for relief against Nationstar for breaches of the specific rules under Regulation X as set forth, *infra*.

16.     The Pettys have a private right of action under RESPA pursuant to 12 U.S.C. §2605(f) for the claimed breaches and such action provides for remedies including actual damages, costs, statutory damages, and attorneys' fees.

4

17.     Congress enacted the FDCPA to prohibit the "use of abusive, deceptive, and unfair debt collection practices." 15 U.S.C §1692a.

## BACKGROUND

18.     Judgment was entered against the Pettys in the Foreclosure on or about April 27, 2015.

19.     A foreclosure sale of the Home was first scheduled for November 30, 2015.

20.     On or about November 20, 2015, the Pettys forwarded a loss mitigation application (the "Application") to Springboard Solutions.  A redacted copy of the Application is attached as *Plaintiffs' Exhibit 1*.

21.     On or about November 20, 2015, Norma Patino, a Document Specialist for Springboard Solutions, submitted the Application to Nationstar.  A copy of an electronic mail message from Ms. Patino to Mr. Petty is attached as *Plaintiffs' Exhibit 2*.

22.     On or about November 24, 2015, the Pettys, by and through the law firm of Diamond & LeSueur, P.C. ("D & L") filed an *Emergency Motion to Stay Judicial Sale* in the Foreclosure. A copy of such motion is attached as *Plaintiffs' Exhibit 3*.

23.    On or about November 30, 2015, the Court entered an Order in the Foreclosure staying the foreclosure sale of the Home until at least January 25, 2016 and the foreclosure sale of the Home was reset for January 26, 2016. A copy of such Order is attached as *Plaintiffs' Exhibit 4*.

24.    On or about January 6, 2016, the Pettys received correspondence from Nationstar dated December 18, 2015 (the "December 18 Letter"). A copy of the December 18 Letter, along with a copy of the envelope in which such was sent, is attached as *Plaintiffs' Exhibit 5*. In the December 18 Letter, Nationstar states that additional documentation was required to supplement the Application, specifically, "[d]ocumentation for all sources of income" and "[p]roof of occupancy". See *Plaintiff's Exhibit 5*.

25.    Further, the December 18 Letter stated that, in regards to "30 days consecutive pay stubs with year to date earnings", that "[Nationstar has] a question about the information that was provided" and requested that the Pettys contact Nationstar to resolve such question. See *Plaintiff's Exhibit 5*.

26.    After receiving the December 18 Letter Mr. Petty called Nationstar and spoke to a representative of Nationstar identified as "Adam Hepworth".

27.    Mr. Hepworth requested that the Pettys submit various documents including updated pay stubs and copies of bank statements for proof of occupancy.

6

28.    On or about January 15, 2016, the Pettys submitted the information requested by Mr. Hapworth *via* both electronic mail communication and Priority Mail Express through the United States Postal Service (USPS) [Receipt No. EL 006583684 US]. Copies of such electronic mail communication,  and any attachments thereto, are attached as *Plaintiffs' Exhibit 6*; a copy of the correspondence sent via Priority Mail Express, along with the shipping receipt and Tracking Information for such, is attached as *Plaintiffs' Exhibit 7*.

29.    As part of the materials submitted to Nationstar on January 15, 2016, the Pettys enclosed a letter dated January 14, 2016 expressing their frustration with the loss mitigation process and Nationstar's handling of the Application and expressing their confusion at Nationstar's lack of attempts to reach out to the Pettys during the months of December 2015 and January 2016.  See *Plaintiffs' Exhibit 6*; *Plaintiffs' Exhibit 7*.

30.    Nationstar received the correspondence sent on January 15, 2016 *via* Priority Mail Express on or about January 19, 2016.  See *Plaintiffs' Exhibit 7*.

31.    On or about January 21, 2016, the Pettys, by and through D&L, sent correspondence to Nationstar captioned "Re: Notice of Error under 12 CFR Section 1024.35(b)(9), 12 CFR Section 1024.35(b)(11), and 12 CFR 1024.41(g),

12 CFR Section 1024.35(d)" *via* Certified Mail [Receipt No. 7014 0150 0000 2358 3678] (the "NOE"). A copy of the NOE is attached as *Plaintiffs' Exhibit 8.*

32. The Pettys sent the NOE to Nationstar at the address which Nationstar has designated on their website (https://www.nationstarmtg.com/CustomerCenter/ContactUs.aspx) as the address to which borrowers must send any "Notice of Error, Complaint, Request for Information or other Qualified Written Request" which is as follows:

> Nationstar Mortgage
> PO Box 619098
> Dallas, TX 75261-9741

33. The NOE stated that Nationstar committed two (2) clear, distinct, and separate errors pertaining to the Loan. See *Plaintiffs' Exhibit 8*.

34. The NOE alleged that Nationstar committed an error pursuant to 12 C.F.R. § 1024.35(b)(9) and/or 12 C.F.R. § 1024.35(b)(11) by committing a violation of 12 CF.R. § 1024.41(g) in that Nationstar continued to move towards the foreclosure sale scheduled for January 26, 2016 despite the fact that the Application was pending review. See *Plaintiffs' Exhibit 8*.

35. The NOE further alleged that Nationstar committed an error pursuant to 12 C.F.R. § 1024.35(b)(11) by committing a violation of 12 C.F.R. § 1024.41(b) in that the December 18 Letter requested information such as "[p]roof of

occupancy" and "[d]ocumentation for all sources of income" despite the fact that such information had already been provided by and through the initial submission of the Application. See *Plaintiffs' Exhibit 8*.

36. As of January 22, 2016, Nationstar and its attorneys Heavner had not taken any action to continue or withdraw the foreclosure sale scheduled for January 26, 2016. In order to save their Home from sale, the Pettys, by and through D&L, filed a second *Emergency Motion to Stay Judicial Sale* in the Foreclosure. A copy of such motion is attached as *Plaintiffs' Exhibit 9*.

37. The Court in the Foreclosure granted the *Emergency Motion to Stay Judicial Sale* on or about January 25, 2016.

38. At the hearing on the *Emergency Motion to Stay Judicial Sale*, Heavner referenced issues concerning $250.00 of extra income on Mrs. Petty's pay stubs and that this was preventing the Application from being complete, however, prior to such point in time, this information was never requested by Nationstar and, moreover, this request was redundant as this income was explained in the Application as Mrs. Petty listed $3,000.00 of annual income for "special duties" and Mrs. Petty's pay stubs listed additional income for things such as "PM BUS DUTY". See *Plaintiffs' Exhibit 1*.

39.     Nonetheless, despite already having explained Mrs. Petty's extra income the Pettys thereafter made numerous attempts to contact Nationstar *via* telephone to discuss the issue, but Nationstar would not respond to the Pettys' numerous voicemail messages and when the Pettys would be able to connect with an individual at Nationstar, the Pettys would be transferred numerous times as no representative would know how to help the Pettys with the request made by Nationstar's counsel.

40.     On or about February 11, 2016, the Pettys submitted the information requested by Heavner regarding the extra $250.00 in income for Mrs. Petty via Priority Mail Express through the USPS [Receipt No. EL 006588505 US]. A copy of such correspondence sent via Priority Mail Express, along with the shipping receipt and Tracking Information for such, is attached as *Plaintiffs' Exhibit 10*.

41.     As part of the materials submitted to Nationstar via electronic mail on February 11, 2016, the Pettys sent an electronic mail message again expressing their frustration with the loss mitigation process and Nationstar's handling of the Application and expressing their confusion and stress due to Nationstar's delays in requesting documentation and in their failure or refusal to respond to the Pettys' voicemail messages.  See *Plaintiffs' Exhibit 10.*.

42.     On or about February 9, 2016, Nationstar sent correspondence to the Pettys, by and through D&L, purportedly in response to the NOE (the "NOE Response"). A copy of the NOE Response is attached as *Plaintiffs' Exhibit 11*.

43.     On or about February 18, 2016, the Pettys received correspondence from Nationstar dated February 10, 2016 (the "February 10 Letter"). A copy of the February 10 Letter is attached as *Plaintiffs' Exhibit 12*.

44.     Nationstar, by and through the February 10 Letter, stated that upon a subsequent review of the Application and the supplemental information to such, that some of the required documents are "missing or incomplete", specifically requesting for Mrs. Petty to "provide the required document" for: "30 days consecutive pay stubs with year to date earnings"; "[d]ocumentation for all sources of income"; and, "[t]wo months bank statements or proof of receipt of income". See *Plaintiffs' Exhibit 12*.

45.     On or about February 19, 2016, Nationstar sent further correspondence to the Pettys (the "February 19 Letter"). A copy of the February 19 Letter is attached as *Plaintiffs' Exhibit 13*.

46.     Due to Nationstar's delays and general lack of diligence in reviewing the Application and the supplemental information thereto, the February 19 Letter indicated that the Request for Modification and Affidavit Form (RMA) submitted

with the Application became stale and that a new RMA would need to be executed and submitted again. See *Plaintiffs' Exhibit 13*.

47.     The Pettys submitted the information requested by and through the February 19 Letter to Nationstar once again *via* electronic mail communication on March 6, 2016, and Priority Mail Express through the USPS [Receipt No. EL 006589112 US] on March 5, 2016, along with correspondence indicating that all of this information had been previously sent to Nationstar. Copies of such electronic mail communication, and any attachments thereto, are attached as *Plaintiffs' Exhibit 14*; a copy of the correspondence sent via Priority Mail Express, along with the shipping receipt and Tracking Information for such, is attached as *Plaintiffs' Exhibit 15*.

48.     On or about March 8, 2016, Nationstar sent further correspondence to the Pettys (the "March 8 Letter").  A copy of the March 8 Letter is attached as *Plaintiffs' Exhibit 16*.

49.     Due to Nationstar's delays and general lack of diligence in reviewing the Application and the supplemental information thereto, the March 8 Letter indicated that the "IRS 4506-T OR 4506-T EZ" submitted with the Application became stale and that a new form would need to be executed and submitted again. See *Plaintiffs' Exhibit 16*.

12

50.    In addition, despite the Pettys having previously sent in documentation for all sources of income on numerous occasions, the March 8 Letter vaguely requests that the Pettys "provide the required document" for "[d]ocumentation of all sources of income" for Mrs. Petty and the "Household Contributor". See *Plaintiffs' Exhibit 16*.

51.    On or about March 28, 2016, the Pettys once again sent the documentation requested by and through the March 8 Letter to Nationstar, despite the fact that such information had been provided numerous times before, *via* facsimile transmission.   A copy of such documents are attached as *Plaintiffs' Exhibit 17*.

52.    Finally, after months of vague, unnecessary, and confusing requests for documentation to supplement the Application, on or about April 19, 2016, Nationstar sent correspondence to the Pettys stating that the Pettys had been approved for a Trial Period Plan under the Home Affordable Modification Program (the "TPP").   A copy of the TPP is attached as *Plaintiffs' Exhibit 18.*

53.    Pursuant to the TPP, the Pettys are to make a total of three (3) monthly payments, each in the amount of $2,173.94, in the months of June 2016, July 2016, and August 2016. See *Plaintiffs' Exhibit 18*.

54.     Due to Nationstar's actions in failing to act with reasonable diligence and obfuscating, delaying, and failing or refusing to properly communicate with the Petty's during the course of the loss mitigation application review process, the Pettys were directly and proximately caused to suffer significant actual harm.

55.     Mr. and Mrs. Petty have a twelve year old son with severe medical problems that have a psychiatric component. Over the extended time frame of the loss mitigation application, their child has attempted suicide on more than four occasions. The Child's social worker and Psychiatrist have advised that some of the ideations that have exacerbated his problems have related to the possibility that his family will have to move. As a result of Nationstar's decision and Heavner's failure to not pull scheduled foreclosure sales despite the mandate of Regulation X against dual tracking, the Pettys and their family have had endured unusually significant emotional strain and stress.

56.     The actions of Nationstar and Heavner have further caused the Pettys to unnecessarily remain in a default or otherwise delinquent status on the Loan and remain in foreclosure for a significantly longer time than they would have if Nationstar had acted appropriately and with reasonable diligence in their handling of the Application and the NOE, which has caused continued damage to their credit and an unnecessary delay in the Pettys' rehabilitation of their credit.

14

57.     The actions of Nationstar and Heavner have caused the Pettys to incur actual damages including, but not limited to, attorneys' fees, costs, and expenses for the preparation and sending of the NOE that was sent to ensure Nationstar's compliance with the relevant portions of Regulation X of RESPA

58.     The actions of Nationstar and Heavner have further caused the Pettys to incur actual damages including, but not limited to, attorneys' fees, costs, and expenses related to the preparation and filing of the *Emergency Motion to Stay Judicial Sale* in the Foreclosure, as well as for attending any requisite hearings for such.

59.     The wrongful and willful actions of Nationstar and Heavner have also caused the Pettys to suffer great emotional distress driven by the fear that they might lose the Home and be forced to leave the Home. This stress and fear has resulted in loss of sleep, anxiety, depression, embarrassment, and other significant and persistent emotional distress and which promised dire medical consequences for their minor child

60.     Throughout this entire ordeal, the Pettys have merely wanted to have their loss mitigation application properly reviewed so that they could obtain a modification for the Loan, so that they could get out of default on the Loan, have the Foreclosure dismissed, and resume making timely, proper payments on the

Loan to Nationstar in order to begin to rehabilitate their credit, and most importantly, remain in their family home.

61.   At the time of the filing of this Complaint, Nationstar has had more than Six Thousand Two Hundred Thirty (6,230) consumer complaints lodged against them nationally, specifically concerning the issue identified on the CFPB's consumer complaint database as "loan modification, collection, foreclosure" related to mortgage products. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database, which can be located at the following hyperlink: http://www.consumerfinance.gov/complaintdatabase/.

## COUNT ONE
### VIOLATION OF 12 C.F.R. § 1024.35(d)
### [Nationstar's Failure to Properly Acknowledge Receipt of a Notice of Error]

62.   The Pettys restate and incorporate all of their statements and allegations contained in paragraphs 1 through 61 as if fully rewritten herein.

63.   12 C.F.R. § 1024.35(a) states that "[a] servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred."

64.   The NOE met the definition of a notice of error for the purposes of 12

C.F.R. § 1024.35 pursuant to 12 C.F.R. § 1024.35(a).

65.    The Pettys sent the NOE to the address Nationstar designated for the receipt of notices of error pursuant to 12 C.F.R. § 1024.35(c) on or about January 21, 2016. Nationstar received the NOE on or about January 26, 2016. S

66.    12 C.F.R. § 1024.35(d) states that "[w]ithin five days (excluding legal public holidays, Saturdays, and Sundays) of a servicer receiving a notice of error from a borrower, the servicer shall provide to the borrower a written response acknowledging receipt of the notice of error."

67.    Pursuant to 12 C.F.R. § 1024.35(d), Nationstar was required to send a written response acknowledging their receipt of the NOE to the Pettys on or before February 2, 2016, that is, within five (5) business days from January 26, 2016.

68.    The Pettys did not and have not received any written response prepared or sent on or before February 2, 2016 from Nationstar.

69.    Nationstar did not prepare or send or otherwise provide any written response acknowledging their receipt of the NOE to the Pettys on or before February 2, 2016, that is, within five (5) business days from January 26, 2016.

70.    Nationstar's actions, in failing to send correspondence acknowledging their receipt of the NOE to the Pettys within five (5) business days of their receipt of the NOE, were a clear and material violation of 12 C.F.R. § 1024.35(d).

71.    Nationstar's actions are believed to be a pattern and practice of behavior in conscious disregard for the Pettys' rights.

72.    As a result of Nationstar's actions, Nationstar is liable to the Pettys for actual damages, as described, *supra*, as well as for statutory damages, costs, and attorneys' fees.

**WHEREFORE**, Plaintiffs pray for the entry of judgment in their favor and against Defendant Nationstar as follows:

A.    Finding that Nationstar breached 12 C.F.R. § 1024.35(d);

B.    Awarding Plaintiffs statutory damages;

C.    Awarding Plaintiffs actual damages in an amount to be determined at trial;

D.    Awarding Plaintiffs costs and reasonable attorney fees; and

E.    For such other and further relief this Court may deem just and proper.

**<u>COUNT TWO</u>**
**VIOLATION OF 12 C.F.R. § 1024.35(e)**
**[Nationstar's Failure to Properly Respond to a**
**Notice of Error in Violation of 12 C.F.R. § 1024.35]**

73.    The Pettys restate and incorporate all of their statements and allegations contained in paragraphs 1 through 72 in their entirety, as if fully rewritten herein.

74.     12 C.F.R. § 1024.35(e)(1) provides that a servicer must respond to a notice of error by either "[c]orrecting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance" or "[c]onducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance."

75.     The NOE alleged that Nationstar committed an error pursuant to 12 C.F.R. § 1024.35(b)(11) by committing a violation of 12 C.F.R. § 1024.41(b) in that the December 18 Letter requested information such as "[p]roof of occupancy" and "[d]ocumentation for all sources of income" despite the fact that such information had already been provided by and through the initial submission of the Application.

76.     12 C.F.R. § 1024.35(e)(3)(i)(B) provides that, in regards to a notice of error submitted pursuant to 12 C.F.R. §1024.35(b)(11), a servicer must comply

with 12 C.F.R. §1024.35(e)(1) no later than thirty (30) days, excluding legal public holidays, Saturdays, and Sundays, after the servicer's receipt of the applicable notice of error.

77.　Nationstar sent the NOE Response to the Pettys on February 9, 2016. See *Plaintiffs' Exhibit 11*.

78.　The NOE Response stated that "no errors were identified during the course of our investigation". See *Plaintiffs' Exhibit 11*.

79.　In order for the Nationstar to have complied with 12 C.F.R. § 1024.35(e)(1) in regards to the NOE Response in claiming that no errors occurred, Nationstar was required to have performed a reasonable investigation into the errors alleged by and through the NOE prior to making such an assertion.

80.　Nationstar claimed that no errors occurred, as alleged by and through the NOE, because a missing documents letter was sent out on December 18, 2015 and the documents requested by and through the December 18 Letter were still missing as of February 9, 2016. See *Plaintiffs' Exhibit 11*.

81.　Nationstar did not perform a reasonable investigation into the errors alleged in the NOE as the Pettys had sent the documentation requested by and through the December 18 Letter and by Mr. Hepworth to Nationstar on or about January 15 *via* both electronic mail and Priority Mail Express through the USPS.

82.    Further, it should be noted that Nationstar received the correspondence sent on January 15, 2016 *via* Priority Mail Express on or about January 19, 2016.

83.    Further, the "missing" documentation referenced in the NOE response was included with the NOE itself as an enclosure.

84.    As such, Nationstar, at the time of preparing the NOE Response, had been in possession of the documents they claimed to have still been missing for more than three (3) weeks.

85.    Any reasonable investigation into the errors alleged by and through the NOE would have uncovered that the documentation claimed to be missing by and through the NOE Response had already been received by Nationstar. A simple review of the enclosures to the NOE itself would have led to the discovery of the "missing" documentation.

86.    Nationstar's actions, in failing to conduct a reasonable investigation of the errors alleged by and through the NOE, constitute a clear and material violation of 12 C.F.R. § 1024.35(e).

87.    Nationstar's actions are believed to be a pattern and practice of behavior in conscious disregard for the Pettys' rights.

88.    As a result of Nationstar's actions, Nationstar is liable to the Pettys for

actual damages, as described, *supra*, as well as for statutory damages, costs, and attorneys' fees.

**WHEREFORE**, Plaintiffs pray for the entry of judgment in their favor and against Defendant Nationstar as follows:

A.   Finding that Nationstar breached 12 C.F.R. § 1024.35(e);

B.   Awarding Plaintiffs statutory damages;

C.   Awarding Plaintiffs actual damages in an amount to be determined at trial;

D.   Awarding Plaintiffs costs and reasonable attorney fees; and

E.   For such other and further relief this Court may deem just and proper.

**COUNT THREE**
**VIOLATION OF 12 C.F.R. §1024.41(b)**
**[Nationstar's Failure to Exercise Reasonable Diligence in Obtaining Documents and Information to Complete a Loss Mitigation Application)**

89.   The Pettys restate and incorporate all of their statements and allegations contained in paragraphs 1 through 88 in their entirety, as if fully rewritten herein.

90.   12 C.F.R. § 1024.41(b) provides that "a servicer shall exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application."

91.    The CFPB's Official Interpretation of 12 C.F.R. § 1024.41(b)(2)(i)(B)

provides that:

> Even if a servicer has informed a borrower that an application is complete (or notified the borrower of specific information necessary to complete an incomplete application), if the servicer determines, in the course of evaluating the loss mitigation application submitted by the borrower, that additional information or a corrected version of a previously submitted document is required, the servicer must promptly request the additional information or corrected document from the borrower pursuant to the reasonable diligence obligation in § 1024.41(b)(1).    See    § 1024.41(c)(2)(iv) addressing facially complete applications.

92.    Moreover, 12 C.F.R. § 1024.41(c)(2)(iv) provides, in part, that:

"[i]f the servicer later discovers additional information or corrections to a

previously submitted document are required to complete the application, the

servicer must promptly request the missing information or corrected documents

and treat the application as complete for the purposes of paragraphs (f)(2) and (g)

of this section until the borrower is given a reasonable opportunity to complete the

application."

93.    Nationstar failed to exercise reasonable diligence in obtaining missing

or incomplete information and documentation to complete the Petty's loss

mitigation application throughout the process of Nationstar's handling of the Application.

94. The Pettys initially submitted the Application to Nationstar on or about November 20, 2015..

95. Although a foreclosure sale was originally scheduled for November 30, 2015, such sale was continued and rescheduled on November 30, 2015 for January 26, 2016 to allow for the review of the Application.

96. Rather than immediately beginning to review the Application to attempt to complete a review of such prior to the rescheduled sale, Nationstar waited nearly three (3) weeks to request missing or supplemental documents from the Pettys by and through the December 18 Letter.

97. Typically, pursuant to 12 C.F.R. § 1024.41(b)(2)(i)(B), a servicer is required to determine whether a loss mitigation application is complete and, if not, to request additional or missing documents to supplement such application via written correspondence, within five (5) business days; yet, after the continuation of the November 30, 2015 foreclosure sale, Nationstar waited nearly three (3) times as long to send the December 18 Letter.

98. Further, the Pettys did not receive the December 18 Letter until January 6, 2016 so it is likely that the December 18 Letter was not even sent on or

about December 18, 2015; unfortunately, the envelope in which the December 18 Letter arrived contained no postmark indicating the date of mailing.

99.     Regardless, despite submitting the Application on November 20, 2015, the Pettys did not receive any communication or request for additional documents from Nationstar until January 6, 2016, more than forty-five (45) days after the initial submission.

100.   The Pettys acted quickly after receiving the December 18 Letter and sent the documents requested by and through such correspondence and by Mr. Hepworth on or about January 15, 2016.

101.   The Pettys sent the documents requested by and through such correspondence and by Mr. Hepworth to Nationstar once again on or about January 21, 2016 as enclosures to the NOE.

102.   After Nationstar's counsel Heavner requested additional information for the Application at the hearing on the *Emergency Motion to Stay Judicial Sale*, which had already been provided to Nationstar, the  Pettys attempted to contact Nationstar multiple times to clarify what further clarification was needed, but Nationstar routinely failed or otherwise refused to respond to the Pettys voicemail messages.

103.  By the time Nationstar provided the clarification necessary to enable the Pettys to comply with the request of Nationstar's counsel, not only had such information already been provided to Nationstar, but Nationstar sent the February 19 Letter and the March 8 Letter indicating that other documentation had become stale since the Application had been submitted on November 20, 2015.

104.  Time and time again, the Pettys complied with all of Nationstar's requests and supplied any requested documentation regardless of whether it had been previously supplied all the way through to sending documentation in response to the March 8 Letter on or about March 28, 2016.

105.  Had Nationstar acted with reasonable diligence in reviewing the Application and in obtaining any information and documentation necessary to complete the Application, as required pursuant to 12 C.F.R § 1024.41(b), the Application would have been reviewed in a significantly shorter period of time allowing for the Pettys to begin to perform on the TPP sooner and allowing them to avoid having to incur attorneys' fees, expenses, and costs in the preparation and sending of the NOE and in having to file the *Emergency Motion to Stay Judicial Sale* in the Foreclosure on or about January 22, 2016.

106.  Nationstar's actions, in failing to act with reasonable diligence in reviewing the Application and in obtaining any information and documentation

necessary to complete the Application, constitute a clear and material violation of 12 C.F.R. § 1024.41(b).

107.   Nationstar's actions are believed to be a pattern and practice of behavior in conscious disregard for the Pettys' rights.

108.   As a result of Nationstar's actions, Nationstar is liable to the Pettys for actual damages, as described, *supra*, as well as for statutory damages, costs, and attorneys' fees.

**WHEREFORE**, Plaintiffs pray for the entry of judgment in their favor and against Defendant Nationstar as follows:

A.   Finding that Nationstar breached 12 C.F.R. § 1024.41(b);

B.   Awarding Plaintiffs statutory damages;

C.   Awarding Plaintiffs actual damages in an amount to be determined at trial;

D.   Awarding Plaintiffs costs and reasonable attorney fees; and

E.   For such other and further relief this Court may deem just and proper.

## COUNT FOUR

### VIOLATION OF 12 C.F.R. §1024.41(g)
### [Nationstar's Violation of Prohibition on Moving in Support of Order of Sale with a Loss Mitigation Application Pending Review]

109. The Pettys restate and incorporate all of their statements and allegations contained in paragraphs 1 through 108 in their entirety, as if fully rewritten herein.

110. 12 C.F.R. §1024.41(g) states that if a borrower submits a complete loss mitigation application after the first filing required for any judicial foreclosure process, but more than thirty-seven (37) days before a foreclosure sale, then a servicer cannot move for foreclosure judgment or order of sale unless: (1) the servicer has sent written notice pursuant to 12 C.F.R. §1024.41(c)(1)(ii), stating that the borrower is not eligible for any loss mitigation options and the borrower has not requested an appeal, or the borrower's appeal has been denied; (2) the borrower rejects all loss mitigation options offered by the servicer; or, (3) the borrower fails to perform under an agreement on a loss mitigation option.

111. Comment 2 of the Official CFPB Interpretations to 12 C.F.R. §1024.41(g) provides that:

> Nothing in § 1024.41(g) prevents a servicer from proceeding with the foreclosure process, including any publication, arbitration, or mediation requirements established by applicable law, when the first notice or

filing for a foreclosure proceeding occurred before a servicer receives a complete loss mitigation application so long as any such steps in the foreclosure process do not cause or directly result in the issuance of a foreclosure judgment or order of sale, or the conduct of a foreclosure sale, in violation of § 1024.41.

112.    12 C.F.R. §1024.41(c)(2)(iv) provides that:

> If a borrower submits all the missing documents and information as stated in the notice required pursuant to § 102[4].41(b)(2)(i)(B), or no additional information is requested in such notice, the application shall be considered facially complete. If the servicer later discovers additional information or corrections to a previously submitted document are required to complete the application, the servicer must promptly request the missing information or corrected documents and treat the application as complete for the purposes of paragraphs (f)(2) and (g) of this section until the borrower is given a reasonable opportunity to complete the application. If the borrower completes the application within this period, the application shall be considered complete as of the date it was facially complete, for the purposes of paragraphs (d), (e), (f)(2), (g), and (h) of this section, and as of the date the application was actually complete for the purposes of paragraph (c).\

113.    12 C.F.R. §1024.41(c)(2)(iv) provides that "[i]f a borrower submits all the missing documents and information as stated in the notice required pursuant to §1026.41(b)(2)(i)(B), or no additional information is requested in such notice, the application shall be considered facially complete".

114.   Comment 1 of the Official CFPB Interpretations to 12 C.F.R. §1024.41(c)(2)(iv) provides that 12 C.F.R. §1024.41(c)(2)(iv) "requires a servicer to treat a facially complete application as complete for the purposes of paragraphs (f)(2) and (g) until the borrower has been given a reasonable opportunity to complete the application."

115.   The problem, however, in the instant matter though, is that when the November 30, 2015 sale was rescheduled for January 26, 2016, Nationstar did not promptly review the Application to determine whether it was complete pursuant to 12 C.F.R. § 1024.41(b) even though the sale was now more than forty-five (45) days prior to the scheduled foreclosure sale; rather, Nationstar did not even notify the Pettys of whether the application was incomplete until the December 18 Letter.

116.   Even if the December 18 Letter had been sent on December 18, that date was only thirty-nine (39) days prior to the rescheduled sale; as such, Nationstar's delay guaranteed that there would be no way for the Pettys to provide such documents to Nationstar by December 19, 2015 as they would be required to in order to have such submitted more than thirty-seven days prior to the sale scheduled on January 26, 2016.

117.   This is a situation where upon the rescheduling of the November 30, 2016 sale, that Nationstar should have sent the notice required by 12 C.F.R. §

1024.41((b)(2)(i)(B), within five (5) business days thereby affording the Pettys an opportunity to submit any missing documents.

118.   Nationstar did not provide the notice required by 12 C.F.R. § 1024.41((b)(2)(i)(B) within five (5) business days of the rescheduling of the November 30, 2015, foreclosure sale, or on or before December 7, 2015; as such, no documents were requested in a timely manner and the Application was deemed to be facially complete as of December 7, 2015 until Nationstar provided a reasonable time for which the Pettys to complete the Application.

119.   The Pettys promptly complied with any and all requests issued by Nationstar all the way through their receipt of the TPP, as such, at the very least, the Application remained facially complete and therefore complete for the purposes of 12 C.F.R. § 1024.41(g) from December 7, 2015 through March 2016.

120.   The Application was facially complete, and therefore complete for the purposes of 12 C.F.R. § 1024.41(g), more than thirty-seven (37) days prior to the foreclosure sale scheduled for January 26, 2016.

121.   Rather than seeking to take reasonable steps to avoid the foreclosure sale from being conducted on or about January 26, 2016, Nationstar and its counsel Heavner took affirmative action during the hearing on the *Emergency Motion to Stay Judicial Sale* on January 25, 2016, the end result of which, if successful,

would have directly resulted in the foreclosure sale being conducted on January 26, 2016.

122. Nationstar's actions in failing or refusing to take reasonable steps to avoid the foreclosure sale from being conducted on January 26, 2016, in moving in support of the order of sale, and attempting to thwart the *Emergency Motion to Stay Judicial Sale* on January 25, 2016, constitute a violation of 12 C.F.R. § 1024.41(g).

123. Nationstar's actions are believed to be a pattern and practice of behavior in conscious disregard for the Pettys' rights.

124. As a result of Nationstar's actions, Nationstar is liable to the Pettys for actual damages, as described, *supra*, as well as for statutory damages, costs, and attorneys' fees.

**WHEREFORE**, Plaintiffs pray for the entry of judgment in their favor and against Defendant Nationstar as follows:

A. Finding that Nationstar breached 12 C.F.R. §1024.41(g);

B. Awarding Plaintiffs statutory damages;

C. Awarding Plaintiffs actual damages in an amount to be determined at trial;

D. Awarding Plaintiffs costs and reasonable attorney fees; and

E. For such other and further relief this Court may deem just and proper.

## COUNT FIVE
### Violation of 15 U.S.C. §1692k
### [Heavner's Violation of the Fair Debt Collection Practices Act]

125.   The Pettys restate and incorporate all of their statements and allegations contained in paragraphs 1 through 124 in their entirety, as if fully rewritten herein.

126. Hevner is a debt collector. Heavner regularly uses the instrumentalities of interstate commerce and/or the mails in its business the principal purpose of which is the collection of debts, and regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

127.   The Pettys are consumers.

128.   The Loan is a consumer debt within the meaning of the FDCPA because it was incurred for household purposes - the purchase of the Home.

129.   The Loan was in default at the time that Heavner attempted to collect the debt by means of the Foreclosure.

130.   Heavner violated 15 U.S.C. §1692(e)(2) when it misrepresented the character, amount, or legal status of the Loan. Heavner misrepresented to the Pettys that the Home would be subject to a sheriff's sale on January 26, 2016 when Heavner knew or had reason to know that the servicer had pending a complete loss

mitigation application and that the servicer could not lawfully move forward with a sale.

131.   Heavner violated 15 U.S.C. §1692(e)(5) when it threatened to take an action  - the sale of the Home at sheriff's sale - that cannot legally be taken.

132.   Heavner violated 15 U.S.C. §1692(f) because its conduct as outlined herein constitutes an unconscionable means to collect or to attempt to collect a debt.

133.   Heavner Codilis violated 15 U.S.C. §1692(d) by employing an unfair and unconscionable means to collect the subject debt - the threat of an imminent sheriff's sale of the Home.

134.   The Pettys were damaged by the above actions. Their health suffered because of excessive worry about the potential loss of the Home and the thought of an imminent sheriff sale.

135.   The Pettys have expended numerous hours consulting with their attorneys as a result of Codilis' deceptive collection actions.

136.   The Pettys were unduly inconvenienced and harassed by Heavner's unlawful attempts to collect a debt.

137.   The Pettys have suffered emotional distress as a direct consequence of Heavner's  unlawful collection practices.

138.   As a result of the above violations of the FDCPA, the Pettys are entitled to an award of statutory damages, actual damages, and legal fees pursuant to 15 U.S.C. §1692k(a).

**WHEREFORE**, Plaintiffs pray for the entry of judgment in their favor and against Defendant Heavner as follows:

A.    Finding that Heavner violated the FDCPA;

B.    Awarding Plaintiffs statutory damages;

C.    Awarding Plaintiffs actual damages in an amount to be determined at trial;

D.    Awarding Plaintiffs costs and reasonable attorney fees; and

E.    For such other and further relief this Court may deem just and proper.

---

## JURY DEMAND

---

The Pettys hereby demand trial by jury.


*Respectfully submitted,*

**TODD E. PETTY** and
**MARY PAT PETTY,** Plaintiffs,

By: */s/ Rusty A. Payton*
    Rusty A. Payton


*Attorneys for Plaintiffs:*
Rusty A. Payton
Marc E. Dann
PaytonDann
115 S. LaSalle Street, Suite 2600
Chicago, Illinois 60603
*email:* payton@paytondann.com
Ph. and Fax. (312) 702-1000